[No. 9384. Department Two. August 25, 1911.]

WHITE BROS. & CRUM COMPANY, LIMITED, *Appellant*, v.
JACOB H. WATSON *et al.*, *Respondents*.[1]

PLEADING—COMPLAINT—DEMURRER—INFERENCES. In the absence
of a motion to make more definite and certain, a demurrer should
not be sustained because of the failure of a complaint to allege a
certain fact, where the fact can be inferred from the whole com-
plaint.

WATERS AND WATER COURSES—APPROPRIATION ON PUBLIC LANDS—
EASEMENT FOR DIVERSION—CHANGE—SECONDARY EASEMENT. The prior
appropriator of the waters of a creek, not diverted on his own lands,
has no right, under U. S. Rev. St. § 2340, providing that all patents
shall be subject to any vested and accrued water rights or rights to
ditches in connection therewith, to make any change in the character
of the servitude by fixing a new point of diversion or changing the
ditch to a pipe line, upon the washing out of the ditch by erosions
and slides whereby the water supply was lost, even if the subsequent
patentee of the servient estate is not able to make any beneficial use
of the water; and such change cannot be sustained as a "secondary"
easement to enter and repair the ditch.

Appeal from a judgment of the superior court for Whit-
man county, Canfield, J., entered June 15, 1910, upon sus-
taining a demurrer to the complaint, dismissing an action
for equitable relief. Affirmed.

*E. V. Kuykendall* and *C. C. Gose*, for appellant.

*Hanna & Hanna*, for respondents.

ELLIS, J.—Appeal from a judgment sustaining a general
demurrer to appellant's amended complaint, which is long but
which, so far as essential to our consideration, may be epito-
mized as follows: Yakiwawai creek, a stream not navigable,
has its source in Whitman county, Washington, about two
miles above the land of respondents described in the com-
plaint, and thence flows to and across that land and the lands
of the appellant, also described in the complaint. The re-

[1]Reported in 117 Pac. 497.

spondents acquired their land by filing thereon as a government homestead on April 16, 1902. In 1881 the appellant's predecessors in interest appropriated all the waters of the creek and carried the same by a ditch and flume from the point of diversion to the lands now owned by the appellant, and ever since the water has been applied to a beneficial use by the appellant upon its land, which without irrigation is arid and unproductive, but with irrigation is highly productive.

At the time of the appropriation of the water, respondents' land and all the lands riparian to the creek above the appellant's lands were public lands of the United States. All of the land above the appellant's land drained by the creek is steep and precipitous, is used only for pasturage, and the rainfall and melting snows are not retained thereon, but readily flow into and cause frequent floods of the creek. The stream, until it reaches the appellant's land, flows through a narrow canyon with steep bluffs on either side, and has a fall of approximately two thousand feet from its source to appellant's land. In the spring of 1907, the flood waters of the creek destroyed appellant's flume and head ditch, and washed away the banks at the point of diversion, making it impossible to divert the water by means of the ditch and flume previously used. The bed of the stream was eroded, causing the water to flow over a sandy and gravelly bottom, so that since the flood, much of the water is lost at the original point of diversion. The right of way by which the water has been carried is along a steep bluff, and respondents' lands traversed by it are unfit for cultivation. The right of way is gravelly, and if appellant is required to convey the water by a ditch, a great part of it will be lost by percolation and evaporation, causing a material injury to the appellant and being of no benefit to respondents. About seventy-six feet above the point of diversion the stream flows over a natural bed rock, and it is necessary, in order to secure and retain full use of the water, to change the point of diversion to that

point, there construct a cement dam, and thence lay a pipe line along the right of way across respondents' land to that of appellant. Unless this is permitted, the appellant will in the future be wholly deprived of the use of the water. Prior to commencing this action, appellant went upon the respondents' land to construct the proposed dam and pipe line, when respondents, by force and threats of violence, prevented, and still prevent, the work. The prayer is for an injunction against interference, for damages, that title to the water, right of way, pipe line, and head works be quieted in appellant, and for general relief.

It will be noted that there is no direct allegation that the point of diversion, either as originally located or as now proposed, is upon the respondents' land. This is urged as one reason that the demurrer was properly sustained. The inference, however, from a reading of the whole amended complaint, is that both of these points and the site of the proposed dam are upon respondents' land. In the absence of a motion to make the amended complaint more specific in these particulars, the demurrer should not have been sustained on this ground.

Assuming these points to be alleged as implied, Does the amended complaint state a cause of action? The demurrer concedes that the appellant's predecessors in interest had appropriated the water at the original point of diversion, and were conducting it by ditch and flume over the original right of way, prior to the inception of respondents' title and while the fee of respondents' land was still in the United States. Section 2339 of the Revised Statutes of the United States provides for the recognition by the courts of vested and accrued water rights, and § 2340 is as follows:

"All patents granted, or pre-emption or homesteads allowed, shall be subject to any vested and accrued water-rights, or rights to ditches and reservoirs used in connection with such water-rights, as may have been acquired under or recognized by the preceding section."

Respondents, therefore, took their land subject to the ease-
ment for the diversion of the water at a then fixed point, and
for the conveyance of the water by ditch and flume on a then
existing right of way across their land to that of the appel-
lants.  The grant from the government to the respondents
was that of a servient tenement, subject to a definite ease-
ment.  There can be no difference between the easement so
acquired and an easement created by grant of a private
owner who afterwards conveys the servient tenement.  In
either case the owner of the dominant tenement has an ease-
ment which he cannot change without the consent of the
grantee of the servient tenement.  The grant from the gov-
ernment to the respondents was subject to "vested and ac-
crued water rights or rights to ditches and reservoirs used in
connection with such water rights as may have been ac-
quired," etc.  There is no intention evinced by the statute to
make the grant subject to such water rights or rights to
ditches and reservoirs as may thereafter become necessary or
convenient.  That a change in the mode of enjoyment might
have been made while the government still owned the servient
tenement does not alter the case.  That was because the owner
of the servient tenement—the government—had accorded a
license through the statute to appropriate any such rights at
any time prior to the grant of patent or allowance of home-
stead or preemption.  But when the government granted
the fee, it granted it subject not to the license, but to vested
and accrued rights which had then been acquired under the
license.  *Smith v. Hawkins*, 110 Cal. 122, 42 Pac. 453; *Oliver
v. Agasse*, 132 Cal. 297, 64 Pac. 401.  By the grant the
title to everything not then appropriated became vested in
the respondents as completely as the appropriated rights
had become vested in the appellant.  Thereafter the *jus dis-
ponendi* incident to the fee was in respondents as to every
right not vested in others by actual prior appropriation.
The manner of diversion, the length and location of the right
of way, the means of conveyance of the water over the right

of way—in short, the easement, became fixed and determined by the facts as they existed when respondents' homestead entry was allowed. No change can now be made in the character of the servitude. A pipe line cannot be substituted for a ditch and flume, nor the right of way changed or lengthened. As to these things the authorities are uniform. Weil's Water Rights in the Western States (2d ed.), pp. 285, 286, §§ 179-180, Title B, Change of Means of Use; *Oliver v. Agasse, supra; Vestal v. Young*, 147 Cal. 715, 82 Pac. 381; *Johnston v. Hyde*, 32 N. J. Eq. 446; *Allen v. San Jose Land & Water Co.*, 92 Cal. 138, 28 Pac. 215, 15 L. R. A. 93; *Dickenson v. Grand Junction Canal Co.*, 15 Beav. 260; *Barrows v. Fox*, 98 Cal. 63, 32 Pac. 811; *Gregory v. Nelson*, 41 Cal. 278.

"It is the exclusive right of the owner of the servient tenement, suffering the burdens of an easement localized and defined, to say whether or not the dominant owner shall be permitted to change the character or plan of the servitude." *Jaqui v. Johnson*, 27 N. J. Eq. 526, 532.

It is suggested that the right which the appellant is seeking to obtain is rather an implied or secondary easement than an additional servitude. The term "secondary easement" is applied to the right to enter and repair and do those things necessary to the full enjoyment of an easement as existing. We have been cited to no authority for extending that term to a change, alteration, or extension such as is here contemplated, while the above authorities hold that the things contemplated are in their nature additional servitudes.

Counsel argues with much force and persuasiveness that, inasmuch as the respondents will in no wise be injured by a change from ditch and flume to pipe line, the right to make the change should be accorded to the appellant; that the taking of the additional right of way and conducting the water in a pipe line invades no substantial right of the respondents. But even if it were shown that the change would be an actual benefit to the respondents we would have no power to compel

them to accept the benefit. The question is one of property rights, not of benefits or injuries. Many authorities so hold, and we have been cited to none to the contrary.

"No one has a right to compel another to have his property improved in a particular manner; it is as illegal to force him to receive a benefit as to submit to an injury." *Merritt v. Parker*, 1 N. J. L. 526, 533.

See, also, *Allen v. San Jose Land & Water Co.*, and *Dickenson v. Grand Junction Canal Co., supra; Tillotson v. Smith,* 32 N. H. 90, 64 Am. Dec. 355.

The alteration by the action of the elements of the physical conditions so as to make the enjoyment of the easement impossible or more difficult, was appellant's misfortune as an impairment of its property, just as if the elements had impaired the enjoyment of its property of any other character. This furnishes no reason why another should be required to contribute to restore the enjoyment of the property, even if the thing to be contributed be something the other does not need, and the surrender of which will not injure him. If it is something in which he has the actual right of property there is no rule of law nor principle of equity which would warrant a court in taking it from him against his will or for the benefit of another. No amount of hardship in a given case would justify the establishment of such a precedent. The next step in the invasion of the right of property would be to invite the courts to measure the comparative needs of private parties, and compel a transfer to the one most needing and who might best utilize the property. If a man may be required to surrender what is his own, because he does not need it and cannot use it, and because another does need it and can use it, then there is no reason why he may not be required to surrender what he needs but little because another needs it much. A doctrine so insidiously dangerous should never find lodgment in the body of the law through judicial declaration. The judiciary may only apply the law according to established principles. If rights such as those here

contended for are to be accorded and can be accorded within the limits of our constitution, it should be done by statute clearly defining the rights, fixing their limits, and prescribing the procedure.

The demurrer was properly sustained. Affirmed.

DUNBAR, C. J., CROW, FULLERTON, and MORRIS, JJ., concur.