[No. 13844. Department One. April 26, 1918.]

LITTLE-WETSEL COMPANY, *Respondent*, v.
W. A. LINCOLN *et al.*, *Appellants.*[1]

WATERS AND WATER COURSES—IRRIGATION DITCHES—EASEMENTS—
"OWNERSHIP." When the title to an irrigation ditch originates in
grant or prescription to use another's land, it never rises above its
source as an easement, and "ownership" of the ditch refers to own-
ership of the easement and not to title in fee.

SAME—IRRIGATION DITCHES—RIGHTS OF DOMINANT ESTATE. Where,
at the time of granting an easement for an irrigation ditch, there
was no contemplation of a greater servitude than the one specified,
the owner of the dominant estate cannot increase the burden of the
easement by turning other waters into the ditch without the consent
of the owner of the servient estate.

SAME—IRRIGATION DITCHES—RIGHTS OF TENANTS IN COMMON. A
tenant in common of the easement of an irrigation ditch has no
right to enlarge the easement right by imposing the additional bur-
den of carrying other waters not in contemplation of the parties at
the inception of the grant, and neither has the right to deposit in
the ditch private waters for his exclusive use; but the fact of co-
tenancy in the easement gives both parties the right to possession
of waters in the ditch according to their respective proportionate in-
terests.

SAME—IRRIGATION DITCHES—ACTIONS—JUDGMENT—CHANGING DI-
VERSION. Upon adjudging the rights of cotenants in an irrigation
ditch, the court is not justified in changing the place and mode of
diversion employed for a long time, merely because it would prove
convenient to one of the parties in his use of a private ditch.

SAME—IRRIGATION DITCHES—DAMAGES FOR DIVERSION—RIGHTS OF
COTENANTS. The wrongful commingling of his private waters, by
one of the tenants in common of a joint ditch, without placing suit-
able measuring devices, forfeits his right to damages for diversion
of part of the water by his cotenant.

Appeal from a judgment of the superior court for
Okanogan county, Pendergast, J., entered May 3, 1916,
in favor of the plaintiff, in an action for injunctive re-
lief and for damages, tried to the court. Reversed.

[1]Reported in 172 Pac. 746.

*J. W. Faulkner* and *Neal & Neal,* for appellants.
*P. D. Smith* and *W. C. Gresham,* for respondent.

FULLERTON, J.—The parties to this action are jointly interested in two ditches constructed across the lands of appellants for the purpose of irrigating their lands with water appropriated by the appellants and by the predecessors in interest of the respondent from the waters of Wolf creek, in Okanogan county, Washington. In one ditch, known as the Hess & Lincoln ditch, hereafter called the Hess ditch, both the parties own an equal interest; in the other, known as the Hess, Lincoln & Shulenbarger ditch, hereafter designated the Shulenbarger ditch, the respondent owns a two-thirds interest and the appellants a one-third interest. By means of flumes, water in the Hess ditch could be diverted into the Shulenbarger ditch. By means of another private ditch, the respondent deposited water appropriated by it from the Methow river in the Hess ditch near its head, and conducted such water through that ditch for use on respondent's lands when there was not sufficient water obtainable from Wolf creek. The appellants made use of this Methow river water on the assumption that they were entitled to one-half of any water in the Hess ditch and one-third of any water in the Shulenbarger ditch, while the respondent claimed sole ownership of all water from the Methow river placed by it in the Hess and Shulenbarger ditches up to the full capacity of its individual interest in such ditches, which was, respectively, one-half and two-up to the full capacity of its individual interest in such claim is that the respondent's interest in the ditches is not a mere easement but is one of full ownership as a tenant in common.

An action for injunctive relief and damages was brought by respondent, founded on allegations of un-

lawful diversion of its water by the appellants and resulting damage to its growing crops, by reason of a shortage of water thereby occasioned, in the sum of $326.25. The answer set up the decree in a prior action between appellants and the predecessors in interest of respondent, whereby it was adjudged that appellants were entitled to one-third of all waters flowing or to flow in the Shulenbarger ditch; that the Hess ditch is carrying a volume of water in excess of one-half its capacity by reason of the mingling of the Methow river and Wolf creek waters, and that the Shulenbarger ditch is carrying in excess of two-thirds of its capacity for a like reason; that the only right respondent has to deposit Methow river water in the ditches on the land of appellants is by virtue of an oral agreement that, in consideration of such privilege, the appellants were to have a right to the use of one-half of the Methow river water emptied into and conveyed through the Hess ditch; that the acts of respondent in carrying water from any source in the ditches in excess of its rightful proportion worked an injury to appellants to their damage in the sum of $500; that respondent closed the headgates of the Lincoln ditch, thereby diverting all the water of Wolf creek through the Shulenbarger ditch, to appellants' damage in the sum of $100; that the waters of Methow river and Wolf creek were commingled by respondent without the employment of any measuring devices to determine the amount conveyed by it from Methow river; that respondent interfered with the devices of appellants for diverting water to their laterals, to the injury of their crops in the sum of $100, and that respondent, at the time appellants were harvesting their hay, turned water into the Shulenbarger ditch in excess of its carrying capacity, causing an overflow whereby their hay, cut and lying on the ground, was

damaged in the sum of $50. On a trial to the court, judgment was rendered awarding respondent $100 damages and appellants $20 damages, and that each party pay one-half of the costs of the action; and further, that the respondent had the right to use the ditches for Methow river water to the full extent of their carrying capacity, provided there was no interference with appellants' right of enjoyment in such ditches. The portions of the decree specially excepted to are as follows:

"(1) That plaintiff and defendants are the owners, as tenants in common, of that certain irrigation ditch, taken out of Wolf creek, in Okanogan county, Washington, commonly known as the Hess, Lincoln and Shulenberg ditch, with an approximate carrying capacity of 5.76 C. F. per second of time.

"(2) That the interest of plaintiff in said ditch and all waters from Wolf creek flowing or to flow through the same is two-thirds, and the interest of defendants in and to said ditch and in and to all the waters flowing or to flow through said ditch from Wolf creek is one-third.

"(3) That the plaintiff and defendants are the owners, as tenants in common, share and share alike, of that certain other irrigation ditch taken out of Wolf creek, in Okanogan county, Washington, commonly known as the Hess and Lincoln ditch, with an approximate carrying capacity of 16 C. F. per second of time; and, after allowance has been made from Wolf creek for the carrying capacity of said Hess, Lincoln & Shulenberg ditch, the plaintiff and defendants are the owners, share and share alike, of all water flowing or to flow from said Wolf creek through said Hess & Lincoln ditch.

"(9) That the plaintiff has and shall have the right to use said Hess & Lincoln ditch to the extent of their full carrying capacity for the transportation of waters from the Methow river, provided that in so doing it does not interfere with the rights of the defendants to carry through said ditches, as herein decreed, their

waters for the irrigation of their lands to the extent of
their interest in said ditches as herein adjudged and
decreed; and the defendants may use either or both of
said ditches for the transportation of water for the
irrigation of their lands to the full capacity of either
or both of said ditches, provided, in so doing they do
not interfere with the rights of plaintiff in said ditches,
as herein adjudged and decreed.

"(15)   That the claim for damages of plaintiff
against defendants, by reason of the unlawful use by
defendants of the waters of the Methow river, from
July 18 to August 4, 1915, and of all the waters of
Wolf creek from August 2 to September 20, 1915, to
which plaintiff is entitled, be allowed to the extent of
$100.

"(17)   That the plaintiff pay half of the legal costs
and disbursements of this action, and defendants pay
half of the legal costs and disbursements of this ac-
tion."

The appellants contend that the court erred in find-
ing and decreeing that respondent has the right to use
the Hess and the Shulenbarger ditches to the extent
of their full carrying capacity for the transportation of
waters from Methow river, and in failing to find that
respondent has no right to use such ditches for that
purpose except upon condition that appellants be en-
titled to use one-half of the Methow river water de-
posited in them.   The issues presented and the finding
of the court that the parties were tenants in common
in the ditches raise the question whether the respond-
ent had, in fact, any greater interest in the ditches than
that of a mere right of easement.

It appears from the evidence that Hess, Lincoln and
Shulenbarger were adjoining settlers upon government
land, and had appropriated water from Wolf creek
through a common ditch for the irrigation of their re-
spective tracts.   Dissension arising among them, Hess,
in the year 1898, brought an action against Lincoln and

Shulenbarger for the purpose of establishing his rights in the ditch. The court decreed that this ditch located upon the lands of the three parties was:

"the property of plaintiffs and defendants equally, that is to say that said ditch and headgate as it now stands and exists is owned by plaintiff and defendants in the ratio of one-third to each of said parties, to wit: one-third to plaintiff and one-third each to defendants; and that the water now running therein or to run therein is and shall be the property of said parties in the same ratio as set out above relative to the ownership of said ditch, that is to say, that each of said parties shall have the exclusive right to take and use one-third of the water running in said ditch or to be run therein without molestation from either of the other owners of said ditch . . . and each of said parties are hereby enjoined from in any way molesting either of the other parties hereto in repairing said ditch and the uses of his said one-third of all water in said ditch or to be in the same by taking said water from the said ditch upon his said land in the usual way."

A month after the foregoing decree was rendered, Hess and Lincoln entered into a contract to jointly build an additional ditch to the west of the Shulenbarger ditch and which was to replace an existing ditch belonging to Hess. The contract was as follows:

"Winthrop, Wash. Nov. 17th, 1898.

"Article of agreement entered into this day between W. A. Lincoln and Geo. W. Hess, both of Okanogan county, state of Washington, in which they agree to take out and construct a ditch for irrigation purposes from a stream known as Wolf creek. Head of said proposed ditch will be located on said stream about 60 rods west of the west line of the farm of W. A. Lincoln and the ditch will continue from the said head gates to and across the land of W. A. Lincoln on as high land as it is possible to run water, and parallel to a ditch owned by Geo. W. Hess, the said ditch being of no farther use or benefit to the said Geo. W. Hess, and by this article the said Hess agrees to abandon the

same. The ditch in contemplation is to be constructed jointly and owned jointly by the said W. A. Lincoln & Geo. W. Hess. The said Geo. W. Hess in constructing the said ditch agrees to furnish team, plow & scraper, and the said W. A. Lincoln agrees to work single handed, furnishing his own tools in construction and continue the joint work as before stated until the said ditch is completed across the land of W. A. Lincoln. Then the labors and interest of Lincoln in said ditch ends. W. A. Lincoln waives all claim of right of way across his land, provided the said ditch is completed according to agreement. It is also agreed between Geo. W. Hess and W. A. Lincoln that, for the consideration of one dollar paid by W. A. Lincoln to Geo. W. Hess, that Geo. W. Hess will allow W. A. Lincoln the use of water from Lake creek to irrigate all the land now under cultivation between the ditch they contemplate building and the said Lake creek so long as Geo. W. Hess owns and controls the same.

"Witness
"J. P. Rader                W. A. Lincoln
"Geo. L. Thompson.         Geo. W. Hess."

The respondent is the successor in interest to all the rights of Hess and Shulenbarger. It will be noted that there is nothing in either the foregoing decree or the contract which divests Lincoln of the title to any portion of his land and vests it in another. Joint ownership of an irrigation ditch does not necessarily constitute a title in fee. A right of way granted for ditch purposes has never been classed as other than an easement; and, usually, when in common parlance the term ownership is used in describing the interest of one in a ditch upon the land of another, it is understood as referring to the ownership of the easement. It is true one may have title to a ditch the same as to any other property, but when such title originates in grant or prescription to use another's land, such title never rises above its source as an easement.

A similar question as to what was meant by ownership of a ditch arose in the case of *Hoyt v. Hart,* 149 Cal. 722, 87 Pac. 569. The parties were litigating over their rights in an irrigation ditch, and, among other things, the plaintiff set up a prior judgment by which it was determined that the plaintiff was the owner of a ditch and waterway across the lands of the defendant for the purpose of conveying waters through said lands. An estoppel by judgment was asserted as precluding defendant from denying plaintiff's ownership, but the court held:

"In plaintiff's plea of former judgment the allegation is that it had been adjudicated that she was the owner of a 'ditch and waterway' across the lands of defendant for the purpose of conveying waters. In the foregoing discussion we have treated this allegation as meaning no more than that she owned an easement or right to carry waters over his lands through a ditch or waterway, and such we think is the proper construction of the language quoted."

We think the same meaning inheres in the language used in the former judgment pleaded in this case which declares the Shulenbarger ditch to be the property of plaintiff and defendants equally, as well as in that employed in the contract declaring that the Hess ditch was owned jointly by Lincoln and Hess. It is well settled that the owner of the dominant estate cannot enlarge or change his easement so as to impose any additional burden upon the servient estate. *White Bros. & Crum Co. v. Watson,* 64 Wash. 666, 117 Pac. 497, 44 L. R. A. (N. S.) 254; Wiel, Water Rights (3d ed.), § 502. At the time the rights of the dominant estate attached against the lands of appellants, there was not in contemplation of the parties a greater servitude than that growing out of the appropriation of the waters of Wolf creek. When the owner of the dominant es-

tate sought to deposit in the ditches a quantity of water
from another source he thereby increased the burden
of the easement, which he was not entitled to do with-
out the consent of the owner of the land, which, in this
case, is neither alleged nor proved by the respondent.
The appellants, it is true, alleged an agreement to al-
low the use of the ditches for the flow of the extra
water in case they were permitted to withdraw it from
the ditches for their own irrigation, but the evidence
failed to establish such a contract.

Does the fact that appellants and respondent are
tenants in common of the ditches and Wolf creek
waters covered by their appropriation give one co-
tenant the right to deposit water in the common ditch
in excess of his original easement? That the parties
here are cotenants may be conceded. They claim their
rights through the same original appropriation and
from the same ditch. *Hough v. Porter,* 51 Ore. 318, 95
Pac. 732, 98 Pac. 1083, 102 Pac. 728. And their rights
are determined by the size of the ditch and the original
appropriation, not by any subsequent diversion. *Hough
v. Porter, supra.* But one difficulty in resting their
rights on the principle of tenancy in common is that
the facts upon which the rule is invoked to establish
the right of one in the ditches would equally establish
the right of both parties to any waters flowing or to
flow in such ditches. All the dealings of the parties
had relation to a joint user of both the ditches and the
water. Accordingly, the introduction into the ditches
by one cotenant of surplus water ought to inure to the
benefit of all. The contract for the Hess ditch pro-
vided that Lincoln and Hess

"agree to take out and construct a ditch for irriga-
tion purposes from a stream known as Wolf creek . . .
The ditch in contemplation is to be constructed jointly
and owned jointly . . . until the said ditch is com-

pleted across the land of W. A. Lincoln, then the labor and interest of Lincoln in said ditch ends.''

The judgment involving the Shulenbarger ditch decrees that such ditch is:

"the property of plaintiff and defendants equally . . . and that the water now running therein or to run therein is and shall be the property of said parties in the same ratio as set out above relative to the ownership of said ditch, that is to say, that each of said parties shall have the exclusive right to take and use one-third of the water running in said ditch or to be run therein without molestation from either of the other owners of the said ditch . . . . and each of said parties are hereby enjoined from in any way molesting either of the other parties hereto in repairing said ditch and the use of his said one-third of all water in said ditch or to be in the same.''

The contract as to the Hess ditch provided for a joint appropriation of waters from Wolf creek. Hess, in return, abandoned a prior ditch and shifted his prior appropriation of Wolf creek waters to the new ditch, as is shown by evidence *aliunde* the contract.

The rights under irrigation ditches in arid regions have developed largely from the necessities of the case, and existing principles of law have usually been applied to meet the situation. But they have not always done so satisfactorily, and the decisions are apparently at cross purposes because they have sought to adjust themselves to the facts in the particular case before the court. One principle often asserted, however, is that a ditch over the land of another is nothing more than an easement. But the courts also recognize that there is a property right in such a ditch and a property right in the water, the ownership of which may be combined in one person in some cases, and, in other cases, that the ditch and the water may rest in separate ownership and either may be sold like any other property.

Growing up with this doctrine, the right of tenancy in common in either the ditch or the water has been recognized. But we do not believe it was ever the intention to imply that such cotenancy was ever based upon a theory that the joint ownership rested upon any theory of ownership in fee. If the initiation of the right to convey water over the land of another originated as an easement, no subsequent user would convert the right into a stronger title. Grant that the easement is so far an interest in land as to render applicable the rules governing tenancy in common, the foundation for the whole superstructure of that character of title is the existence of the easement, and hence the principles of cotenancy are secondary to those applying to easements and must be construed in connection with the doctrines of easements. It is the rule that the owner of the dominant estate can make no larger use of his easement or change its character in any way so as to increase the burden on the servient estate. We think this rule in cases of easements is paramount to the rule that a cotenant may use the joint property to the full extent, if in so doing he interferes in no way with its enjoyment to like extent by the other joint tenant. The tenancy in common rule is afforded full scope by the user of the waters of Wolf creek, which was the only water involved when the title by cotenancy was initiated. But to say that the parties, who have a joint tenancy in the ditches for the use of Wolf creek waters, have such a character of ownership as will entitle them to impose an additional servitude on the servient estate would do violence to the law of easements in order to give the joint tenants more enlarged rights than were acquired at the inception of their title. The trial court finds that the appellants and respondent are tenants in common in the

ditch, and consequently that respondent had the right, when the ditch was short of water to which appellants were entitled, to deposit water therein from its private ditch and have the entire use of such added water to the exclusion of appellants. The court's finding that the parties are cotenants in the ditch would necessarily give both parties the same rights in the ditch, that is, each would have the right to the possession of all the property held in cotenancy according to their respective proportionate interests. This the decree does not afford, inasmuch as it awards respondent the right to introduce Methow river waters for its sole use, while it confines appellants to the waters of Wolf creek and does not even accord them an equal right to introduce waters from additional sources. In this we think the decree is erroneous.

But further than that, we think the court errs in not limiting the rights of the parties as tenants in common by the superior rules of easements applicable in this case, since the sole right of the respondent as a tenant in common is rested and founded upon its interest in the ditch as a mere easement. The respondent seeks to enlarge its easement right, not by grant, but by user adverse to appellants, a user which has not yet ripened into title by prescription. It seeks a use of the common property over and above any use accorded to the cotenant, which likewise imposes an additional burden on the property of appellants not in contemplation of the parties at the inception of the grant of easement rights. The added volume of water necessarily increases the deposit of silt in the ditch, subjects its banks to greater danger of overflow and of breakage, and naturally augments the amount of seepage on the lands of appellants. It is not a question of whether the added servitude may in any wise prove beneficial to the appellants.

The appellants contend that the court erred in finding and decreeing that the appellants are the owners of one-half of the waters of Wolf creek flowing through the Hess ditch after allowance made for the full carrying capacity of Wolf creek waters in the Shulenbarger ditch. The evident intent of this provision of the decree was to compel the appellants to carry as much as possible of the Wolf creek water to which they were entitled through one ditch, so as to leave greater capacity in the Hess ditch for the deposit of the Methow river waters. There is no warrant in the evidence nor in the law for such decree. A certain quantity of water had been appropriated from Wolf creek and diverted through two separate ditches over the land of appellants for the use of themselves and of the predecessors in interest of the respondent. There is no evidence justifying a change in the place and mode of diversion, except that it would prove convenient for the respondent because its private ditch deposited the waters of Methow river in the Hess ditch. We do not deem this a sufficient reason for altering the mode of diversion employed by the appellants for a long period of time.

The appellants contend that the allowance to respondent of $100 damages for the use of water flowing in the ditches, which was due to respondent's deposit therein of Methow river water, was erroneous. The appellants were charged with using half of the river water claimed by respondent from July 18 to August 2, 1915, and with using all the water from Wolf creek between August 3 and September 20, 1915. The evidence shows that, by the act of respondent, the waters of Methow river were commingled in the ditches with the waters of Wolf creek without the placing of suitable measuring devices. Such commingling by the respondent, even if its right of separate ownership were not lost by the introduction of the water into ditches

jointly owned by the appellants, would forfeit respondent's right to damages for the use of the water. In regard to the Wolf creek water, the evidence shows that it was all used by the appellants between August 3 and September 20, 1915. The flow was not very large at that season, and in compensation the respondent had its river water flowing through appellants' ditches. The evidence of resulting loss to respondent through the use of all the Wolf creek water by appellants is not very satisfactory, but as the evidence was conflicting and the trial court was better situated to judge of the credibility of the witnesses, we are not disposed to disturb his finding that the respondent was damaged by the acts of appellants in the sum of $100.

The decree of the lower court will be reversed, in so far as it grants the respondent the right to flow its Methow river waters through the ditches on the land of appellants, and in so far as it requires appellants to conduct as much as possible of their share of Wolf creek waters through the Shulenbarger ditch. The damages and costs awarded by the trial court will stand as adjudged. The appellants will recover their costs in this court.

ELLIS, C. J., PARKER, MAIN, and WEBSTER, JJ., concur.