224 P.2d 201

**STAMATIS et al. v. JOHNSON et ux.**

No. 5227.

Supreme Court of Arizona.

Nov. 20, 1950.

Kramer, Morrison, Roche & Perry, of Phoenix, for appellants Milton Stamatis and Cresanthe Stamatis, his wife.

Warren L. McCarthy, County Atty., Phoenix, for appellant County of Maricopa.

Cunningham, Carson, Messinger & Carson, of Phoenix, for appellees.

FAULKNER, Superior Judge.

Appellees (plaintiffs below) brought suit against appellants (defendants below) for a mandatory injunction to compel the latter to reopen and restore to its former condition an open irrigation ditch located on the defendants' land and in which plaintiffs claimed a prescriptive right of use. Judgment for mandatory injunction and permanently enjoining the defendants from interfering with the ditch was granted. From this judgment defendants have appealed.

The undisputed testimony shows that the open irrigation ditch involved in this action was used by plaintiffs and their predecessors in interest, without any change in its location, for a period of more than twenty years immediately before the filing of the complaint in 1948, for the purpose of carrying water for the irrigation of their lands. This use gave plaintiffs a prescriptive easement to the ditch, for such purpose, and established its permanent location.

By implication defendants Stamatis and wife admit the existence of such prescriptive easement, and also make a more direct admission in their answer and special defense, their statement being as follows: "That * * * the defendants Milton Stamatis and wife caused a new ditch * * * to be constructed and placed underground upon the old prescriptive easements, as defendants Milton Stamatis and wife are informed and believe, upon which the said old ditch had been operated * * *" Counsel for said defendants further state in their opening brief that the ditch "has been used for a long time and has become a prescriptive easement traversing the land of the servient estate. * * *"

Said defendants have been the owners since 1929 of the lands lying on both sides of said ditch, which extends from a canal on Seventh Street, outside the city limits of Phoenix, to the lands of plaintiffs situated near Third Street. Defendants Stamatis and wife, through their agent Phoenix Title & Trust Company, a short time before the filing of plaintiffs' complaint, and during the year 1948, platted and dedicated a subdivision of the lands on which said ditch was located, and dedicated to public use as a street or highway a strip of land 60 feet wide to be known as Ocotillo Road, in the middle of which road said open ditch was located. Said ditch as originally constructed, and as used up until 1948, carried water by gravity flow from said canal on Seventh Street to plaintiffs' premises, the diversion from the Seventh Street canal being by means of a headgate situated near the middle of said Ocotillo Road.

During the summer of 1948, defendants Stamatis, without the consent and over the objections of plaintiffs, constructed and placed a concrete tile pipeline with an inside diameter of 14 inches, leading from said headgate on Seventh Street to the south side of said Ocotillo Road, a distance of 51 feet, and thence on and along the south side of said Ocotillo Road, a distance of approximately 1250 feet, to a standpipe which was built high enough to raise the water to the level of plaintiffs' lands, and piped the same onto plaintiffs' lands at the same place where water had been delivered to them by gravity flow through the old ditch. Throughout most of its length, said pipeline was located approximately 26 feet south of the line of said open ditch to which plaintiffs had acquired a prescriptive easement. The pipeline was buried, and furnished with valves, and apparently furnished water as conveniently for users as it could be obtained from the open ditch.

The only serious question of law involved in the case is this: Could defendants, by providing facilities for the delivery of water to plaintiffs' premises equal to or better than the old ditch, compel plaintiffs to accept such new facilities and abandon their prescriptive rights in the old ditch? The appellants say "Yes." They rely on Brown v. Bradbury, 110 Colo. 537, 135 P.2d 1013, which appears to sustain their contention. That case, however, stands practically alone. The general and almost universal rule with reference to change in the location of an easement after the location has once been definitely established, regardless of whether it has been acquired by grant or by prescription, is laid down as follows in 17 Am.Jur., Easements, Sec. 87: "The general rule is that the location of an easement once selected cannot be changed by either the landowner or the easement owner without the other's consent. The reason for this rule is that treating the location as variable would incite litigation and

depreciate the value and discourage the improvement of the land upon which the easement is charged. Accordingly, a definite location of an easement determines and limits the right of the grantee so that he cannot again exercise a choice. Similarly, a definite location binds the grantor so that he has no right either to hinder the grantee in the exercise of his right or to compel him to accept another location, although the latter location may be equally convenient with the right or privilege originally granted. Furthermore, many courts hold that a right of way by prescription, which runs in a definite course to a fixed point, is no more subject to change by parol agreement or by acts or conduct than if it had been created and so described by deed. The location, however, may be changed with the express or implied consent of both parties, and an estoppel to claim a former location to be the true one arises from acquiescence in a change." The rules are stated as follows in 28 C.J.S., Easements, § 84. "As a general rule, in the absence of statutes to the contrary, the location of an easement cannot be changed by either party without the other's consent, after it has been once established either by the express terms of the grant or by the acts of the parties, except under the authority of an express or implied grant or reservation to this effect. It is competent, however, for the parties to change the location by mutual consent, and such consent may be implied from their acts and acquiescence. After a change has been made by mutual consent, the general rule again operates to prevent a further change of location by either party without the other's consent."

A number of the earlier cases which support the rules as set forth by the above mentioned authorities are listed in the opinion in White Bros & Crum Co. v. Watson, 64 Wash. 666, 117 P. 497, 499, 44 L.R.A., N.S., 254, wherein the court said: " * * But, even if it were shown that the change would be an actual benefit to the respondents, we would have no power to compel them to accept the benefit. The question is one of property rights, not of benefits or injuries. Many authorities so hold, and we have been cited to none to the contrary. * * *"

These general rules as to changes in the location and manner of use of easements appear to have been recognized by our court in Beville v. Allen, 28 Ariz. 397, 400, 237 P. 184, 185, wherein it is stated: " * * * It is, of course, true that the town could not, by an ordinance passed in 1917, destroy an easement across private property which had vested years before. An easement for an irrigation ditch is property, and cannot be taken or damaged, even by the public, without payment therefor. Article 2, § 17, Constitution of Arizona."

A more recent case which sustains these general rules, and cites later sup-

porting cases, is Hannah v. Pogue, 23 Cal. 2d 849, 147 P.2d 572, 574, wherein the court said: " * * * The scope of a prescriptive easement is determined by the use through which it is acquired. A person using the land of another for the prescriptive period may acquire the right to continue such use, but does not acquire the right to make other uses of it. (Citing cases.) * * *" See, also, 28 C.J.S., Easements, § 74, where the rule is succinctly stated as follows: "Where an easement is acquired by prescription, the extent of the right is determined by the user in which it originated."

Defendants devote much of their opening brief to a discussion and citation of authorities on the right of a court of equity to fix the location of an easement. Their arguments are based either on the erroneous assumption that the location of the easement in this case was never definitely fixed, or are made in total disregard of their own admissions that plaintiffs were the owners of a prescriptive easement. A prescriptive easement presupposes the continued use of a definite location for the full period of the statute of limitations relating to the acquisition of title to real property. Therefore, the admissions of defendants that plaintiffs owned a prescriptive easement for their ditch eliminated any question as to the permanence of its location. The cases cited by defendants indicate that it is only in those cases where the owners of both the dominant and the servient estate agree that a right of way exists, but there is uncertainty as to its exact location, that a court of equity may step in at their request and fix the location, and look to the convenience of the respective parties in so doing. Such cases cited by counsel for defendants are wholly inapplicable here, as there is no question in this case as to the existence and location of the easement.

Defendants Stamatis and wife were guilty of an arbitrary violation of the property rights of plaintiffs. It is apparent from the record that they could have located Ocotillo Road on their own lands north of plaintiffs' easement, thereby avoiding the situation that they now face. If carrying out the terms of the decree of the lower court will be burdensome to defendants, they have no one to blame but themselves. They invited the trouble. The purpose of the decree was to restore the rights of plaintiff as they existed when defendants interfered with the easement; and the law entitles plaintiffs to the restoration of their property, in accordance with the decree of the superior court.

The defendant Maricopa County is entitled to no relief on this appeal. The land dedicated by defendants for Ocotillo Road was burdened with the easement of plaintiff at and prior to the time of the dedication, and the dedication did not have the effect of destroying the easement. Beville v. Allen, supra.

The judgment is affirmed.

LA PRADE, C. J., and STANFORD and DE CONCINO, JJ., concur.

PHELPS, J., being disqualified, the Honorable J. W. FAULKNER, Judge of Superior Court of Mohave County, was called to sit in his stead.

UDALL, Justice (dissenting).

The majority has shocked my conscience by ordering the reopening of an old, unsightly, wasteful, open irrigation ditch down the center of a "blacktop" public street, dedicated in a newly platted subdivision, just to satisfy the whim of plaintiff, who, as I see it, stands on a bare legal right. This is particularly true when the defendants by an expenditure of $1500 have provided plaintiff with a covered and adequate, modern, concrete tile pipeline from the same intake to the identical point of discharge.

It was Chief Justice Shaw of Massachusetts who said that "The ultimate object of all laws and of all jurisprudence is to do justice between parties." The experienced and learned trial judge found: "There is no room for argument on the proposition that plaintiff is in an infinitely better position by reason of the existence of the concrete pipe through which to irrigate his premises than he was through an open ditch, and there is not the slightest question but that the pipe line has enhanced the value of the property in the eyes of any purchaser in the event he wishes to sell."

It is my view that without doing violence to the rules or weakening the authority of positive law, this court, under its broad equitable powers, could find a way of doing justice between the parties without perpetuating for all time an archaic and dangerous instrumentality of irrigation. It should be remembered that the judgment now affirmed prohibits, in effect, Maricopa County, the owner in fee, from ever covering this open ditch.

One can have but little patience with either the thoughtlessness or poor judgment exercised by defendants on the one hand or the unyielding stubbornness of the plaintiffs in demanding their pound of flesh, on the other. But neither attitude is a justification for this court's conceding its impotence to do the equitable and fair thing which the situation demands.

At this crossroad I favor following the path marked out by the enlightened decision of the Supreme Court of Colorado in the case of Brown v. Bradbury, 110 Colo. 537, 135 P.2d 1013, which course, in this instance, would lead to an approval of defendants' modern method of conveying irrigation water to plaintiffs' land in a scientifically constructed tile conduit laid underground, even though the pipe line be 26 feet distant from the original ditch line.

For these reasons I register my dissent.