NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PATRICIA HUMPHREY, et al., *Plaintiffs/Appellees*,

*v.*

SCOTTSDALE WORSHIP CENTER INC, *Defendant/Appellant*.

No. 1 CA-CV 20-0336
FILED 3-18-2021

Appeal from the Superior Court in Maricopa County
No. CV2019-006651
The Honorable Rosa Mroz, Judge

**AFFIRMED**

COUNSEL

Provident Law, Scottsdale
By Erik W. Stanley, Christopher J. Charles
*Counsel for Defendant/Appellant*

Timothy A. La Sota PLC, Phoenix
*Counsel for Plaintiffs/Appellees*

---

**MEMORANDUM DECISION**

---

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1   Scottsdale Worship Center ("SWC") appeals the superior court's grant of summary judgment in favor of Patricia Humphrey and James F. Burke (collectively "Appellees"), enforcing a restrictive covenant against SWC. "[E]nforcing the intent of the parties is the 'cardinal principle' in interpreting restrictive covenants." *Powell v. Washburn,* 211 Ariz. 553, 557, ¶ 14 (2006) (citation omitted). The undisputed intent of the restrictive covenant between SWC and Appellees is to preserve the residential character of the subdivision. For the reasons stated below, we affirm the judgment.

**BACKGROUND**

¶2   Appellees own homes in Desert Estates Unit Four, a residential subdivision in Phoenix. Humphrey owns Lot 8 and Burke owns Lot 22. SWC is a non-profit corporation that owns Lots 6, 17, 18, and 19 and operates a church on Lots 17–19. There is a residence on Lot 6 which is directly across the street from Lots 17–19. SWC contends that since it acquired Lot 6 in 1999, it has continuously used the residence for various church-related group activities and periodically as housing for church staff. Appellees counter, claiming SWC stopped using the residence on Lot 6 for group activities in 2007 because of a settlement of prior litigation with Humphrey.

¶3   The Desert Estates Unit 4 subdivision is subject to a Declaration of Restrictions ("Restrictions") and is zoned by the City of Phoenix as a residential neighborhood. SWC has operated a school for autistic children in the main worship center on Lots 17-19 for several years. SWC wanted to move the school across the street into the residence on Lot 6, and it applied to the City of Phoenix for a use permit. Ultimately, the Board of Adjustment granted the use permit as a reasonable accommodation under the Americans with Disabilities Act. Appellees opposed the application.

¶4        Appellees brought this action seeking a declaration that the proposed school violated the Restrictions and an order enjoining SWC from operating a school on Lot 6. The parties filed cross motions for summary judgment. The superior court found that the proposed use of Lot 6 as a school violated § 4 of the Restrictions which prohibits any structure other than a "detached single-family dwelling[.]" The court also found the adverse possession statute of limitations did not bar Appellees' claim because SWC's use of Lot 6 for religious group activities was not the same as operating a school.[1] SWC timely appealed from the judgment and award of attorneys' fees to Appellees.

## DISCUSSION

¶5        In reviewing the superior court's rulings on cross motions for summary judgment, we review questions of law de novo but view the facts in the light most favorable to the party against whom judgment was entered. *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191 (App. 1994). Summary judgment is appropriate if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. *See* Ariz. R. Civ. P. 56(a).

## I.    The Restrictions Prohibit the Operation of a School on Lot 6.

¶6        SWC argues that the Restrictions do not prohibit it from operating a school on Lot 6 because the structure will remain a "detached single-family dwelling" and, therefore, it does not violate § 4 regardless of its use. Appellees argue, and the superior court agreed, that using the structure as a school violates § 4, which restricts anything other than single family dwellings, garages, or guest houses.

¶7        This appeal requires us to interpret the Restrictions, which like covenants, conditions, and restrictions ("CC&Rs"), represent "a contract between the subdivision's property owners as a whole and individual lot owners." *Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 196 Ariz. 631, 634, ¶ 5 (App. 2000). We interpret CC&Rs to give effect to the parties' intention "as determined from the language of the document in its entirety and the purpose for which the [CC&Rs] were created." *Powell*, 211 Ariz. at 554, ¶ 1 (adopting Restatement (Third) of Property: Servitudes (2000) ("Restatement (Third)") § 4.1(1)). If the terms are clear and unambiguous, we give effect to them as written. *Town of Marana v. Pima*

---

[1]      The court also rejected SWC's other arguments, but those are not relevant to this appeal.

*County*, 230 Ariz. 142, 147, ¶ 21 (App. 2012). We review the superior court's interpretation of CC&Rs de novo. *Swain v. Bixby Vill. Golf Course Inc.*, 247 Ariz. 405, 410, ¶ 19 (App. 2019).

**¶8**        In addressing whether the Restrictions allow SWC to operate a school on Lot 6, the parties and the superior court relied on § 4, which states:

> No structure shall be erected, altered, placed or permitted to remain on any of said lots other than one detached single-family dwelling not to exceed one story in height and a private garage not to exceed one story in height for not more than Three (3) cars, and a guest or servant quarters for the sole use of actual non-paying guests or actual servants of the occupants of the main residential building.

We found this very Restriction unambiguous in *Burke v. Voicestream Wireless Corp. II,* 207 Ariz. 393, 397, ¶ 18 (App. 2004), *abrogated on other grounds in Powell,* 211 Ariz. at 556–57, ¶¶ 12–15. *Burke* held that § 4 precluded construction of a 50-foot cell tower on Lot 17, finding that although the tower was a "structure," it was not a single-family home, garage, or guest house. *Burke*, 207 Ariz. at 397, ¶ 18. In *Burke,* the court did not address the relevant inquiry here—whether operation of a school in a building that was formerly a residence violates § 4.

**¶9**        The superior court found that using the residence as a school meant it was no longer a dwelling. The court based its ruling on the dictionary definition of the term "dwelling," which is "a shelter (such as a house) in which people live[.]" *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/dwelling (last visited March 3, 2021).

**¶10**        SWC contends this interpretation is erroneous because § 4 only restricts the type of structures allowed and not the subsequent use of that structure. Although § 4 does not contain an express use restriction, the term "dwelling" implies a residential use restriction. This interpretation is consistent with the Restrictions' stated intent—to preserve the "choice residential" character of the subdivision. SWC does not challenge that this is the overall intention of the Restrictions. This intention is illustrated in § 10 of the Restrictions, which sets forth specific use restrictions as follows:

> No store, office or other place of business of any kind and no
> hospital, sanitarium, or other place for the care or treatment
> of the sick or disabled, physically or mentally, not any theater,

4

saloon, or other place of entertainment shall ever be erected or permitted upon any of said lots, or any part thereof, and no business of any kind or character whatsoever shall be conducted in or from any residence on said lots.

Perhaps the parties did not cite § 10 because it contains unenforceable language prohibiting facilities for the care or treatment of disabled persons. *See Westwood Homeowners Ass'n v. Tenhoff,* 155 Ariz. 229, 236–37 (App. 1987). However, the remainder of § 10 is enforceable because it is severable. *Mousa v. Saba,* 222 Ariz. 581, 587, ¶ 25 (App. 2009) (remainder of a contract containing a void provision is enforceable if the contract clearly shows the parties intended it to be severable). Here, the Restrictions contain an explicit savings clause: "[i]nvalidation of any one of these covenants or restrictions by judgment or court order shall in nowise affect any of the other provisions, which shall remain in full force and effect." Given that the unenforceable language is severable, the remaining restrictions contained in § 10 prohibit business use of any kind and preclude using the property as a school.

**¶11** Although § 4 does not contain an *express* use restriction, it does contain an implicit residential use restriction by virtue of the "single-family dwelling" limitation. In that sense, it is similar to *Ginsberg v. Yeshiva of Far Rockaway,* 358 N.Y.S. 2d 477, 479 (N.Y. App. Div. 1974), which held that a proposed school violated a CC&R which provided that no lots "shall be used except for one private residence." *See also Exch. Nat'l Bank of Chicago v. City of Des Plaines,* 336 N.E. 2d 8, 11, 15–16 (Ill. App. Ct. 1975) (restriction that buildings shall be "for residence purposes only" remained valid and precluded rezoning for a retail building despite a prior agreement to allow a church and church buildings in subdivision). When reading § 4 and using § 10 to inform, it is clear the intention of these Restrictions is to maintain the residential character of the subdivision. We affirm the judgment enjoining SWC from operating a school on Lot 6.

## II. SWC's Prior Use of Lot 6 For Church-Related Activities Does Not Preclude Enforcement of the Restrictions.

**¶12** SWC argues that Appellees' attempt to enforce the Restrictions is barred by the adverse possession statute of limitations. A.R.S. § 12-526(A). SWC claims it has used the residence on Lot 6 for religious instruction, church-related activities for seniors and youth groups, and as housing for church staff. SWC asserts its prior use satisfies the adverse possession requirements because it was "actual, open and notorious, hostile, under a claim of right and was exclusive and continuous" for more

than ten years. *Lewis v. Pleasant Country, Ltd.,* 173 Ariz. 186, 189 (App. 1992); A.R.S. § 12-521(A). Assuming without deciding that SWC can rely on the doctrine, we conclude that SWC's prior use does not preclude enforcement of the Restrictions.

**¶13**        Even though SWC previously engaged in certain non-residential uses on the property, it may not now engage in *other* non-residential uses without violating the Restrictions. As a matter of law, one acquiring a prescriptive easement through adverse use "may not exceed the uses through which they acquired the easement." *Inch v. McPherson,* 176 Ariz. 132, 136 (App. 1992)*; see also* Restatement (Third) § 7.7, cmt. b. "The scope of a prescriptive easement is determined by the use through which it is acquired . . . . Those using the land of another for the prescriptive period may acquire the right to continue such use, *but do not acquire the right to make other uses of it.*" *United States ex rel. Zuni Tribe of N.M. v. Platt,* 730 F. Supp. 318, 324 (D. Ariz. 1990) (citing *Stamatis v. Johnson*, 71 Ariz. 134, 138 (1950)) (emphasis added).

**¶14**        In *Platt,* the Zuni Tribe historically used a path across the landowner's property for a quadrennial pilgrimage. 730 F. Supp. at 319. The court held the Tribe was entitled to an easement for that use only and could not place gates, use water sources, or light fires on the property. *Id.* at 324. Similarly, in *Inch,* the Inchs acquired a prescriptive easement to park their cars on a three-foot strip of their neighbor's property based on their adverse use for that purpose. 176 Ariz. at 135–36. The court held this use did not, however, permit the Inchs to build a block wall on the disputed property. *Id.* at 136.

**¶15**        SWC argues that its proposed use as a school is indistinguishable from use for group religious activity and will not change the physical structure on Lot 6. In determining whether the activities conducted in the residence are sufficiently similar, we consider the difference in the physical character and purpose of the use, and the relative burdens caused by the proposed change in use. *See* Restatement (First) of Property § 478 (1944) (factors for determining the extent of prescriptive easements include physical character, purpose, and relative burden on servient tenement). "If the change is not in the kind of use, but merely one of degree imposing no greater burden on the servient estate, the right to use the easement is not affected." *Gaither v. Gaither*, 332 P.2d 436, 438 (Cal. Ct. App. 1958) (holding the use of a driveway for operation of a trailer park was a substantial change in the nature of use from the prior use for residential ingress and egress and farming purposes).

**¶16** SWC has used the residence for "group religious activities" for up to 30 people. While some of these prior activities involved religious education, the nature and purpose of a full-time school is functionally different. For example, children and teachers will be on the property primarily on weekdays instead of the previously varied times, durations, and days of use. Moreover, some of the prior activities were consistent with residential use, such as Bible study and small group gatherings. By contrast, a school is not consistent with residential use. In fact, a special use permit is required before a school may operate in a neighborhood zoned for residential use. *See* Phoenix Zoning Ordinance § 608(C), (D)(7). In short, there is a fundamental difference between SWC's prior use of the residence for group religious activities and the proposed use as a school. Given this result, the factual dispute as to whether SWC conducted the church related group activities at the home on Lot 6 after 2007 is not material.

**¶17** We affirm the ruling that SWC did not acquire a prescriptive easement to operate a school based on its prior use of Lot 6.

**¶18** We award Appellees their reasonable attorneys' fees on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-341.01; *Pinetop Lakes Ass'n v. Hatch,* 135 Ariz. 196, 198 (App. 1983) (holding an action to enforce a restrictive covenant "arises out of contract" for purposes of § 12-341.01).

## CONCLUSION

**¶19** We affirm the judgment in favor of Appellees.



AMY M. WOOD • Clerk of the Court
FILED: AA

7