[Civ. No. 4317. Third Appellate District.—April 30, 1932.]

F. M. CALLISON et al., Respondents, v. MT. SHASTA POWER CORPORATION (a Corporation) et al., Appellants.

William B. Bosley, Thomas J. Straub, Jones & Dall, Athearn, Chandler & Farmer and Chenoweth & Leininger for Appellants.

Jesse W. Carter for Respondents.

THOMPSON (R. L.), J.—This is an appeal from an injunction restraining the defendants from flooding plaintiffs' lands or diverting the water of Fall River so as to deprive them of their riparian rights thereto for the purposes of irrigation and domestic use.

Fall River is a small stream which flows southerly in Shasta County through a flat basin, emptying into Pit River at Fall River Mills. Fall River has an average summer flow of 1200 cubic feet of water per second. It has low receding banks in the vicinity of plaintiffs' lands. One mile above the mouth of this river there is a natural rock reef dam which extends across the entire stream retarding the flow and impounding the water therein. The defendant, a hydroelectric power corporation, is engaged in manufacturing and supplying its customers with electricity for heating and lighting purposes. The power company owns all of the land adjacent to Fall River on both sides of the stream for a distance of two and one-half miles above its mouth. In 1920 this company constructed a concrete dam across Fall River just above the rock reef for the purpose of impounding and diverting the water of that stream. From a point directly above this concrete dam the defendant dug a tunnel southerly connecting with Pit River six miles below its juncture with Fall River. At this point a hydroelectric power-house was constructed. At the Fall River entrance to this tunnel a penstock and diverting apparatus were installed to control the discharge of water into the canal. The power-house, penstock and tunnel have a capacity of 1800 cubic feet of water per second. This is adequate to divert the entire flow of water from Fall River.

Twenty-six plaintiffs are involved in this action. Each of them owns land above the concrete dam and riparian to

Fall River. The complaint alleges and the court found that the defendants exercising' an unreasonable use of the water of Fall River, alternately impounded it so as to cause the injurious flooding of plaintiffs' lands, and upon the contrary, at other times, diverted the entire stream to 'their detriment, thus depriving them of necessary water for irrigating their lands and for domestic use. An injunction was thereupon issued restraining the defendants from interfering with the natural flow of the stream or the ,normal level of the water of Fall River as it passes over, across or adjacent to the lands of plaintiffs.

The appellants do not contend that· the findings lack adequate support of the evidence. It is however; asserted a court of equity is powerless to compel a lower riparian owner of land, in view of his correlative water rights, to maintain fixed levels of a stream at all seasons .regardless of possible periods of drought or times of flood, that upper riparian owners of land have no title or right of control over the water of a stream after it has passed their land.

The appellants contend that the injunction wrongfully requires them to maintain arbitrary levels of water in Fall River as a condition upon which they are permitted to maintain their dam, penstock and tunnel for diverting the water to be used for hydroelectric power purposes. We think the injunction may not reasonably be so construed. The court found that the flow of the stream in its natural condition, as it passes over, through and adjacent to the lands of the upper riparian owners "was practically the same each year"; in other words, that the normal level of the stream is substantially uniform from year to year, varying to conform with the seasons. The approximate variance and normal level of the stream are ascertained and declared. The normal depth of the stream is measured with relation to the height of the defendant's concrete dam. The court adopted findings in this regard as follows: That from May 15th to August 15th of each year, the surface of the water was level with the top of the concrete dam; from August 15th to September 1st there was an increase of the depth of the stream of 1.5 inches; from September 1st to October 1st there was an additional increase of water of 2.5 inches; from October 1st to February 1st there was a further

increase of 8 inches in depth; from February 1st to April 15th there was a further increase of 4 inches in depth; from April 15th to May 15th there was a gradual decrease in depth until the water again reached the top of the concrete dam.

The court then found that "The defendant is entitled to have all of the waters of said Fall River continue in its customary flow by, through, over and upon the said riparian lands subject only to such diminution of flow as results in the reasonable and lawful use by upper riparian proprietors on their riparian lands; and it (the defendant) is entitled to take, divert and use in a reasonable manner the waters of said Fall River on its said lands for riparian purposes, *including the generation of electric energy.* . . . "

The injunction then restrained the defendants from "maintaining or operating their said concrete dam across said Fall River at intake, or the canal, tunnel, surge chamber, penstock or power house in connection therewith, (so) that *the natural elevations of the surface of the water in said river is raised or lowered* where the same flows through, over, along, across, by, upon and from the lands of said plaintiffs".

The injunction further recites that: "Said defendants may, and they are hereby permitted to so maintain and operate their said dam, canal, tunnel, surge chamber, penstock and power house that the surface elevation of the waters in said river, where the same flows through, over, along, across, by, upon and from the said lands of said plaintiffs, and each of them, will be maintained as the same existed in a state of nature. . . . That the maintenance by said defendants of the elevation of the water surface in said Fall River at their said concrete dam at the elevations hereinabove . . . set forth, and during the times therein specified, shall constitute a compliance with this decision requiring said defendants to maintain the surface elevation of the waters in said river," adjacent to the upper riparian lands of the plaintiffs.

It appears from the terms of the injunction that the court merely seeks to restrain the defendants from operating or maintaining their dam, penstock and tunnel in such a manner as to interfere with the "natural elevations of the

surface of the water'' in Fall River, as it flows over or adjacent to the lands of plaintiffs so as to deprive the upper riparian owners of their vested water rights for irrigation and domestic use. The court fixes the natural elevation of the water for the various seasons. We must assume these figures are substantially correct. We are cited to no evidence in conflict therewith.

■ The appellants concede they were not authorized to flood the lands of upper riparian owners by maintaining a dam which backed the waters up so that it overflowed their lands. The opening brief contains this language: ''We freely admit that defendant has no right to overflow the lands of plaintiffs by damming back the waters of Fall River.'' But the defendants assert ''it is entitled to correlative rights, and that it cannot be compelled to maintain fixed levels of the stream at its diversion dam''. In support of this claim the case of *Turner* v. *James Canal Co.*, 155 Cal. 82 [132 Am. St. Rep. 59, 17 Ann. Cas. 823, 22 L. R. A. (N. S.) 401, 99 Pac. 520], is cited. That case declares:

''It is accordingly well settled here that each riparian owner has a right to a reasonable use of the water on his riparian land for the irrigation thereof, and that the so-called common-law right of each to have the stream flow by his land without diminution, is subject to the common right of all to a reasonable share of the water.''

This statement is supported by numerous California cases. In the case of *Fall River Irr. Dist.* v. *Mt. Shasta Power Corp.*, 202 Cal. 56 [56 A. L. R. 264, 259 Pac. 444], it was held that this appellant's reasonable use of the water of Fall River upon its riparian lands for hydroelectric power purposes, is a proper riparian use thereof. It must therefore be accepted as the law of this case that the appellants have a right to the use of their reasonable proportion of the water of Fall River for the generating of electric power. In the case of *Turner* v. *James Canal Co., supra,* it is said:

''The determination as to what is the reasonable share of each riparian owner is a question of fact, to be decided according to the circumstances of the case.''

The injunction in the present case may be construed to grant to the appellants this reasonable correlative share of

the water of this stream for riparian and power purposes. It specifically so provides. The injunction declares in that regard: "The defendant . . . is entitled to take, divert and use in a reasonable manner the waters of said Fall River on its said lands for riparian purposes, *including the generation of electric energy.*" It is true the quantity of water which the defendants may be permitted to take as their reasonable proportionate share is not fixed and determined in specific terms of cubic feet or second feet of water. The apportionment of water was not an issue in the case. The injunction will be construed to mean that the natural elevations of the surface of the stream, as found by the court, will be deemed to have been maintained, subject to the defendants' right to use their reasonable proportion therefrom for riparian purposes. The injunction does further provide that:

"The maintenance by said defendants of the elevation of the water surface in said Fall River at their said concrete dam at the elevations herein above set forth, during the times therein specified, shall constitute a compliance with this decision requiring said defendants to maintain the surface elevations of the waters in said river."

In reconciling the language of the injunction so as to uphold the judgment, it may be said this does not mean that any variance from these specified depths caused by a reasonable riparian use of the water will necessarily constitute a violation of the injunction on the part of the appellants.

The same construction of the injunction must be applied to any variance from these ascertained elevations which may occur by reason of the pumping of water from the stream by upper riparian owners of land. The appellants contend that the record shows that upper riparian owners pumped from the stream in 1927 the aggregate quantity of 109.5 cubic feet of water per second, and that this constituted nearly one-tenth of the entire summer flow of the stream. We must assume, however, that the natural elevations of the stream which were ascertained and declared by the court, made due allowance for such pumping of water by riparian owners other than the defendants. In other words, it is reasonable to assume, the specific levels which were ascertained by the court, represent the amount

of water which naturally remained in the stream after the pumping of water which the record discloses.

■ It is asserted that the injunction is invalid because it attempts to require the defendants to maintain arbitrary elevations of the water regardless of the effect upon the stream caused by unusual periods of drought or times of flood. We think there is no merit in this contention. Such unusual conditions of flood or drought are not natural. Elevations of the stream which are caused by unusual floods or drought are not natural conditions. It would be a complete defense to a charge of violating the injunction to show that the deviations from the normal elevations of the stream were caused by unusual floods or periods of drought, so long as the defendants do not contribute thereto by an unreasonable diversion of the water.

■ There is no merit in the appellants' contention that the injunction is invalid because some upper riparian owners of land were not interested as parties in this particular litigation.

The appellants cite the case of *Miller & Lux., Inc.*, v. *Worswick*, 187 Cal. 674 [203 Pac. 999], in support of their contention that the court is without authority to interfere with the diversion of the water of Fall River after it has passed the property of the upper riparian owners. The opinion in that case contains this language:

"The law as established and recognized by the decisions of this state, in every case in which it has been considered, is declared to be that the rights of a riparian owner in the waters of the abutting stream are not affected by any interference with the waters of the stream, made on privately owned land after they pass below the boundaries of such riparian land. Such use below, no matter how long continued or what may be the nature of the claim of right thereto by the user thereof, in no manner affects the riparian rights pertaining to the land above the place of use and point of diversion."

This declaration of principle is based upon the facts of that particular case which conclusively show the upper riparian owner was not damaged by the lower appropriator's use of the water after it had passed beyond the complainant's control. An abundance of authority sustains that avowed principle under such circumstances. That this de-

cision was dependent upon proof of an absence of damage to the property of the upper riparian owner is evidenced from the following language therein contained:

"The rule that such diversions do not affect the upper riparian rights follows logically from the well-settled rule stated in the above-cited cases and in every other case on the subject of prescription, that 'in order to establish a right by prescription, the acts by which it is sought to establish it *must operate as an invasion of the rights of the party against whom it is set up. The enjoyment relied upon must be of such a character as to afford ground for an action by the other party'. (Anaheim Water Co.* v. *Semi-Tropic Water Co.,* 64 Cal. 192 [30 Pac. 623, 625].)"

■ The Worswick case from which the foregoing language is quoted does not hold that an upper riparian owner of land is without his remedy to prevent the abnormal and unreasonable diverting of the water of a stream, or the impounding thereof so as to injuriously flood his land even though this damage is inflicted by a lower riparian owner by means employed on his own land. It must be apparent that the damage to upper riparian land may be just as great, as a result of drought or flooding, whether that condition is unlawfully produced by artificial means applied from above or below one's land. In support of the judgment we may assume the evidence shows that the natural rock reef dam across Fall River retarded the velocity and flow of the water of that stream so as to retain the approximate depths ascertained by the findings at the various specified seasons of the year, and thus adequately supply plaintiffs' land with water by percolation so as to produce their crops. And that by opening defendants' penstock and tunnel which were situated above this rock reef dam, the natural flow of the river is rapidly withdrawn from its channel so as to deprive the plaintiffs of its normal beneficial use. Allowing for the reasonable proportionate share and riparian use of the water by the defendants, certainly the plaintiffs may enjoin a further trespass upon their rights which results in the unreasonable diminution of water and drought of their lands so as to destroy or seriously damage the crops thereon. We are cited to no evidence in conflict with the foregoing findings of court.

We are not in accord with the appellants' contention that it is physically impossible for a lower riparian owner of land to diminish the flow of water adjacent to the property of an upper riparian owner on the same stream. It is said in the opening brief that: "As the diversion works of defendant are downstream from the lands of plaintiffs, it can never diminish the flow at the lands of plaintiffs." While it is true that substantially all the water which reaches the lands of the appellants in its course down the river-bed must first pass the lands of the upper riparian owners, it is quite apparent the natural rock reef dam retarded the flow and impounded the water so as to raise the surface level for a considerable distance up a comparatively flat basin with low and receding banks so as to irrigate the soil by percolation to a very great extent. It is equally obvious that the presence of a tunnel and penstock which are located immediately above the concrete dam, with a capacity of diverting the entire stream, may so rapidly draw off the water of Fall River as to materially lower the normal level of the stream to the serious detriment of the upper riparian owners of land.

Upon the contrary the concrete dam which was erected by the defendants above the natural rock reef successfully impounds the water of Fall River at certain seasons, while the penstock and tunnel are closed, so as to flood the lands of plaintiffs and destroy their crops. Numerous authorities hold that a lower riparian owner may not maintain a dam and impound the water of a stream so as to injuriously flood the land of upper riparian owners. Indeed, the appellants concede this is the law.

In view of the foregoing construction of the injunction which was issued in this proceeding, we are of the opinion it does not exceed the jurisdiction of the court.

The judgment is affirmed.

Preston, P. J., and Plummer, J., concurred.