257 P.2d 541

**POSEY et al. v. DOVE et al.**

No. 5372.

Supreme Court of New Mexico.

March 23, 1953.

Rehearing Denied June 9, 1953.

George A. Shipley, Alamogordo, for appellants.

Mechem & Mechem, Las Cruces, for appellees.

FOWLER, District Judge.

The plaintiffs (appellants) sued to enjoin the defendants (appellees) from maintaining a dam or obstruction across the Penasco river which backed up and impounded the river waters and caused them to flood some two or three acres of the plaintiffs' land during such times as the defendants were using the structure to raise the waters to a height sufficient to allow it to flow into the intake of the ditch then being used to convey the water for irrigation of the defendants' lands. After trial, the court dissolved the restraining order previously issued and dismissed the suit. The plaintiffs appeal.

Upon a stipulation of facts augmented by brief testimony, the court made findings of fact and conclusions of law which depict the circumstances of the case so clearly that, at risk of prolixity, they are quoted in full:

"Findings of Fact

"1. The plaintiffs are the owners of the land described in the complaint, which lands are located on the Penasco River. The defendant Dove is the owner of the lands on the river immediately below the land of the plaintiffs, and the defendant Smith is the owner of the land on the river immediately below the land of the defendant Dove.

"2. That, for many years prior to the year 1941, the defendants irrigated their land from a spring known as the Bell Spring, or the Bottomless Spring, which spring arose on the land of the plaintiffs, and the water from the spring was conducted by a ditch across the lands of the plaintiffs and onto the lands of the defendants.

"3. That in the year 1941 a big flood occurred on the Penasco River, which filled up the ditch of the defendants.

"4. That in the year 1942 the Soil Conservation Service, acting with the consent of John L. Parker, the then owner of the lands now owned by the plaintiffs, entered upon said lands and changed the course of the Penasco River so that the course of said river now occupies the land formerly occupied by the ditch of the defendants, and lowered the spring so that it is now in the bed of the river.

"5. That the highway, as presently constructed, is close to the river and it is not feasible to build and maintain a ditch from the spring between the river and the highway.

"6. That after the year 1942 the spring broke out on the upper side of the high-

way and the defendants constructed a ditch from it down along and under the highway to the lands of the defendant Dove, and the water was conducted from that spring onto the defendants' land and used for irrigation.

"7. That the spring dried up and the defendants went farther up on the highway and conducted water down through said ditch, until in the year 1946 when it dried up.

"8. That in the year 1947 the defendants went in at a place between 400 feet and 500 feet below the spring on the lands of the plaintiffs and constructed a headgate in the river for the purpose of raising the water in the bed of the stream.

"9. That the defendants started to irrigate by the use of said headgate and irrigated for about a day and a night, when they were stopped by the injunction issued in this cause.

"10. That the water rights of the defendant Dove and defendant Smith were initiated and the water applied to beneficial use of their lands prior to the year 1907.

"11. That the plaintiffs had knowledge of the ditch right of way on their land prior to the time they purchased said land from John L. Parker.

"12. That plaintiffs are the owners of the S½SW¼, SW¼SE¼ Sec. 26; NE¼ NW¼ Sec. 35, all in Township 16 S., R. 14 E., N.M.P.M., in Otero County, New Mexico, and were the owners of said land at all times material to this action.

"13. The lands of the plaintiffs and the defendants are situated in the Penasco Valley and this valley is drained by a perennial stream known as the Penasco River which runs in a Southwesterly and Northeasterly direction through the lands of both the plaintiffs and the defendants.

"The lands of the defendant Dove adjoin the lands of the plaintiffs on the downstream side and the lands of the defendant Smith adjoin the lands of the defendant Dove likewise on the down-stream side. The defendant Dove has a water right for the irrigation of some 5 acres of land out of the waters of the Penasco River and the defendant Smith a water right for some 3½ acres out of said stream.

"14. Prior to 1941 the defendants for the irrigation of their said lands maintained a ditch from a spring near to and tributary of the Penasco River located on the lands of the plaintiffs and about 500 or 600 feet upstream from the boundary line between plaintiffs and defendant Dove.

"15. That the public highway between Weed and Mayhill, runs Northwest of the ditch taking the water from said spring and parallel with said ditch.

"About the year 1941 a very heavy flood in the Penasco Valley washed debris, sediment, rocks etc., into said valley and to some extent if not entirely filled up the spring from which the defendants took their water supply and likewise filled up their ditch.

"16. Immediately after the 1941 flood a new spring broke out in or near the borrow pit on the opposite of the road from the old spring, and thereafter until 1946 the defendants used the water from such new spring for the irrigation of their land by carrying it down the borrow pit on the opposite side of the public road from their old ditch to a point opposite their land and from thence by culvert under the highway into a ditch from which their lands were irrigated.

"17. In 1942 the Soil Conservation Service, in reconstructing the area from the damage caused by the 1941 flood, straightened the channel of the Penasco river through the lands of the plaintiffs and moved it a distance of 100 feet or more so that the channel thereafter and as now existing, passes over the old spring and coincides generally with the old ditch line used by the defendants prior to 1941; and in changing the channel the Soil Conservation Service enlarged and deepened the same by some 3 or 4 feet below what was formerly the bottom of the ditch of the defendants.

"18. In 1946 the new spring which had been flowing in the borrow pit of the highway dried up leaving the defendants without water for irrigation and in April 1947 they constructed a cement headgate or structure in the main channel of the Penasco River on the lands of the plaintiffs about 50 feet above the boundary line between the plaintiffs and the defendant Dove, and between 400 and 500 feet below their old point of diversion from the stream.

"In this structure the defendants placed boards for the purpose of obstructing the flow of the water and to raise the level approximately 40 inches and throw the water out at the structure into the old ditch from whence the waters flowed onto and over the lands of the defendants.

"19. In damming the river by means of said obstruction the defendants thereby caused the river to form a pool and back up onto and over the lands of the plaintiffs, flooding between 2 and 3 acres of the lands of the plaintiffs.

"20. The lands of the plaintiffs so flooded are in the Penasco Valley and are planted to blue grass and other grasses for permanent pasture and produce valuable forage feed for plaintiffs' livestock.

"21. The flooding of the plaintiffs' lands by the defendants causes damage to the plaintiffs by leaving water standing thereon and if continued will kill the grass and forage growing thereon.

"22. The continued flooding of the plaintiffs' lands will result in continuing and irreparable damage to the plaintiffs.

"23. The *plaintiffs* (defendants) did not have and have not secured from the State Engineer of the State of New Mexico an order permitting them to change the point of diversion of their irrigation water and did not secure a permit and do not now have a permit to place a dam in the Penasco River at the place and of the character which they have placed therein.

"Conclusions of Law

"1. The defendants have an easement for right of way for their ditch over the lands of the plaintiffs.

"2. That the injunction should be dissolved. The easement of the dominant estate was altered by lawful authority, with the consent of the owner of the *subservient* (servient) estate, and defendants have a right to make such alteration that will regain the use of· their easement."

The judgment merely recites that the court "having made his decision, on file herein, doth find: That the plaintiffs have failed to sustain the allegations of their complaint," and orders dismissal of the cause and dissolution of the restraining order.

A study of said decision reveals that the court found every fact essential to the granting of an injunction as prayed, but that relief was denied upon the grounds stated in the conclusions of law announced by the court and based on other facts found in the decision. The first of said conclusions, although a necessary predicate to the second, in and of itself would not require or authorize the judgment in the face of such findings. And so it appears that the judgment hinges upon the conclusion announced in the second sentence of Conclusion No. 2 of the above quoted decision, unless it be determined as a matter of law that the easement itself does not exist.

Under the attack made upon the judgment in this appeal, the questions for decision may be now stated. They are:

(a) Is the proposition, that the easement having been altered by lawful authority with consent of the owner of the servient estate, the defendants have a right to make such alteration as will regain the use of their easement, available to the defendants as a defense in this case?

(b) Do the defendants have an easement of right of way for their ditch over the lands of the plaintiffs? Or otherwise stated, does it appear as a matter of law that the defendants do not have such easement?

(c) Is said proposition and conclusion of law that, the easement having been altered by lawful authority with consent of the owner of the servient estate, the defendants have a right to make such alteration

as will regain the use of their easement, correct and sustainable and applicable to, and properly applied in, this case?

The plaintiffs present five assignments of error, being addressed to the court's refusal to make their requested conclusions of law; to the making of the conclusions announced by the court, and to the rendering of the judgment. All these they argue under three points; the first, that the defense that the defendants' easement "was destroyed by 'lawful authority'" was neither pleaded nor litigated, and was not available as a defense on the trial of the cause; second, that the owner of an easement can make no alteration in the dimensions, location or use of his easement which increases the burden on or damages the servient estate, except by consent of the owner of the servient estate; and third, that the defendants have lost whatever easement they may have had over the plaintiffs' lands.

For better understanding of plaintiffs' first point, the substance of the pleadings and certain evidence given at the trial will be reviewed. The complaint alleged the residence of the parties; plaintiffs' ownership of the land involved; the land was agricultural in character and was used for growing crops and for pasture; the Penasco river flows through it and its waters are used by the plaintiffs and others for irrigation; in 1947 the defendants put a concrete structure in the river within the plaintiffs' land and on several occasions placed obstructions in said structure and caused the waters to be impounded and backed up on and over said land for several hundred yards, thereby causing the land to be waterlogged and damaged; plaintiffs protested and asked defendants to desist but they refused and stated their intention to continue to so impound the waters as they saw fit; and, in its paragraph 5, the complaint alleged that the defendants "have no right of any kind or character to place an obstruction across said river at the point aforesaid and to cause said waters to be so backed up on and over the lands of the plaintiffs," and that unless restrained the defendants would continue the practice and cause irreparable damage, etc.

By their answer the defendants denied that the land was agricultural land and was being used for growing crops, and that the maintaining of the structure had damaged the land; and denied "the allegations of Paragraph V;" and they admitted the other allegations of the complaint and expressly admitted that "they placed the structure referred to in Paragraph IV in the river." No affirmative or special defense was pleaded.

At the trial before the court plaintiffs' counsel dictated into the record, a stipulation outlining the situation of the lands of the parties, the fact that prior to 1941

the defendants took their water from the old spring on plaintiffs' land, the occurrence of the flood in 1941 which "filled up the ditch through which the defendants were drawing their water," the constructing of the dam or headgate across the river in 1947 by the defendants, and other matters including these statements, "Both the plaintiffs and the defendants have water rights for irrigation out of the Penasco," and "Some time during the year of 1942 the Soil Conservation Service, in doing general repair work in the Penasco Valley, made a change of the location of the Penasco River, moving it a few hundred feet to the northwest side of the canyon or valley next to the highway where it has remained since." One John L. Parker, from whom the plaintiffs purchased their land, testified that he was the owner of the land in 1942 when the Soil Conservation Service did the work and put the river channel in its present location; one James G. Wayne, an employee of the Soil Conservation Service, testified that it is not the practice of said Service to do work on private lands without the owner's consent and that there was a written agreement on the place; other witnesses testified as to the work done by the Soil Conservation Service and the change of location of the river channel so that it runs over the old spring and over and along the line of the defendants' ditch therefrom. All this line of evidence came in without objection.

The defendant Dove did not testify. The defendant Smith testified that he was away in 1942 while the Soil Conservation Service work was going on and he did not know about it at that time; that the 1941 flood "practically filled the ditch up, from the spring up to where the headgate is, but it didn't do anything to the rest of it."

It was brought out that the plaintiffs were acquainted with the land and the ditch when the latter was being used for irrigation from the old spring.

 Arguing their first point, plaintiffs say that the court's decision was upon an issue not raised by the pleadings and not litigated, and upon a theory not advanced by either party to the suit. The defense that defendants' easement was altered by lawful authority was not pleaded. To have been made certainly available, it should have been pleaded. It was an affirmative defense of justification, a plea of confession and avoidance, and rightly should have been pleaded as new matter. See Rules of Civil Procedure, Sec. 19–101 (8–c), NMSA 1941. The allegation contained in paragraph 5 of the complaint that the defendants had no right of any kind or character to place an obstruction across the river at the point and to cause the waters to be backed up over plaintiffs' lands, was a conclusion of law and was unnecessary, for, if the facts pleaded were true, the justification, if any, for the ob-

struction was a matter of defense. Having admitted putting the dam in the river, the defendants' answer raised no issue of fact by denying said unnecessary conclusion by denial of "the allegations of Paragraph V," in which it and other allegations occurred.

"No issue of fact is raised by a denial of an unnecessary or immaterial allegation in a complaint or other pleading. Under the code system of pleading no issue of fact is raised by a denial of a mere conclusion of law arising from the pleaded facts." 71 C. J. S., Pleading, § 517, page 1074; Overton v. White, 18 Cal.App.2d 567, 64 P.2d 758, 65 P.2d 99.

But the matter did not rest there. At the outset of the trial plaintiffs' counsel dictated the stipulation above mentioned, with its reference to the change in the river location by the Soil Conservation Service and, without objection, defendants' counsel probed the question and elicited the evidence about the work done by said agency that changed and materially altered the condition of the ditch and the spring from which it has conveyed water for irrigation of defendants' lands; plaintiffs' counsel also dropped in a few questions about the same subject, and afterwards requested and had the court adopt findings Nos. 14 and 17 in the decision recited above.

Plaintiffs say the only issue joined by the pleadings is as to damages suffered by them through the acts of the defendants. That seems to be a correct appraisal on that matter. But the evidence and the facts concerning said work done in 1942, and the circumstances and the results, did not relate to the subject of such damages. Defendants point to said evidence adduced before the court without objection, and to said findings requested and obtained, and claim that the issues pertinent to the defense aforesaid were litigated.

In the Rules of Civil Procedure, by Sec. 19–101(15–b), NMSA 1941, it is provided:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby

and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Quoting this rule and emphasizing it in part, in the case of George v. Jensen, 49 N.M. 410, 165 P.2d 129, 131, this Court said:

"This rule, although derived from Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and identical therewith, is but declaratory of a rule long obtaining in this jurisdiction that absence of a pleading to support the proof is waived when a party litigates the issue without objection. Canavan v. Canavan, 17 N.M. 503, 131 P. 493, Ann.Cas.1915B, 1064; Jackson v. Gallegos, 38 N.M. 211, 30 P.2d 719."

Evidence on the issue here called in question was received without objection, the issue was litigated, and the defense the plaintiffs complain of was available to the defendants when the decision and judgment were made.

Nor do we feel assured that defendants' counsel was insensible to the theory on which the case was decided, since throughout the trial he was pointing up the evidence to sustain it, and his second requested

conclusion of law, which the court rejected as drawn, was identical in effect with the conclusion announced—the court merely expanding it and explaining therein his reasons for making it.

■ But plaintiffs say there is nothing to show the owner of the land ever consented to the alteration of the ditch by the Soil Conservation Service and that, moreover, he could not consent to an alteration in defendants' easement since he was not its owner and the statute, Sec. 48–508, NMSA 1941, authorized the Soil Conservation Service to work upon lands only upon obtaining consent of the owner and of every interest in such lands. The record carries no suggestion that the defendants consented to the change, the only evidence on the subject being the testimony of defendant Smith, who said he was living away at that time and did not know the work was going on. The ditch, the physical, earthy structure on the ground, was altered by said agency. No direct word as to the consent of the landowner is in the record, but from the direct evidence a reasonable inference of such consent to the alteration of the ditch, meaning said earthy structure, may be drawn.

"A reasonable inference may be defined as a process of reasoning whereby, from facts admitted or established by the evidence, or from common knowledge or experience, a reason-

able conclusion may be drawn that a further fact is established. Semerjian v. Stetson, 284 Mass. 510, 187 N.E. 829." Stambaugh v. Hayes, 44 N.M. 443, 103 P.2d 640, 645. And see State v. Jones, 39 N.M. 395, 48 P.2d 403.

It appearing that said defense complained of was available under the issues litigated, and that substantial competent evidence supports its prerequisite facts found by the court, the trial court did not commit error in considering such defense and making decision on it.

The next question for decision here is a determination as to whether, upon consideration of the whole record in the case, it appears that, as a matter of law, the defendants do not have an easement of right of way over the plaintiffs' lands. This involves an examination of plaintiffs' third point, which is that the defendants have lost whatever easement they may have formerly had over said lands. At the outset of their presentation of this point the plaintiffs say "the existence of an easement was not an issue in this case," and that they do not want to deprive defendants from exercising any right they may have "to divert water from the Penasco River" for irrigation of their lands provided that "said right may be exercised without damage to the plaintiffs."

By the record it appears that for more than sixty years the waters of the old spring, or Bottomless Spring, as it was called, had been used for irrigation of defendants' lands by its owners and had been conveyed from the spring to the lands through and by means of the ditch in question. The water rights of the defendants are not denied or called in question in this case but they have bearing on it because the ditch was the mode of use and appropriation of the waters of that spring. That water right is a property right of high order, and every inference deducible from the record shows it to be the property of the defendants.

"A water right is property and in fact it is held to be real property by most authorities.

" 'It is generally conceded by all of the authorities that a water right, or an interest in water, is real property, and it is so treated under all the rules of law appertaining to such property.' 2 Kinney on Irrigation and Water Rights (2d Ed.) p. 1328." New Mexico Products Co. v. New Mexico Power Co., 42 N.M. 311, 77 P.2d 634, 641.

After making the statements aforesaid the plaintiffs contend that from the evidence it appears that defendants have lost "whatever easement they may have had over the lands of the plaintiffs for a ditch" for three reasons: (1) by an act of God,

that is the flood of 1941; (2) by the acts of the defendants in permitting the ditch to be so altered by the Soil Conservation Service that it can be no longer used for its purposes, and (3) by abandonment.

The evidence and findings are that the flood of 1941 filled the ditch with debris and silt and "to some extent if not entirely filled up the spring." It does not seem that this would have been an insuperable obstacle to the recovery of their use. The ditch was built or dug in the first place and it is reasonable to suppose that it could have been cleaned of the debris with which the flood filled it, and that the spring could have been cleaned out. Nothing in the evidence indicates the contrary. The spring is still flowing in the river bed although now at a lower level than then.

By no evidence does it appear that the defendants knowingly permitted the Soil Conservation Service to dig out their ditch or turn the river channel over any part of it. The only evidence directly on the subject is to the contrary. There seems to be force in the argument that they have "acquiesced" in the change for several years, but the contention loses strength upon reflection that had they acted immediately upon discovery of the changes they would have faced the same difficulties that they face now in regard to making use of their original ditch and the

spring, and that they then had another available source of water for their needs.

An easement of right of way may be abandoned. But abandonment usually implies an intention to abandon and yield and give over the right. The intention may be evidenced by acts as well as words but where an act is relied on as the proof, it must unequivocally indicate such intention. 28 C. J. S., Easements, §§ 58, 59, pages 722, 723.

"The non-user of a ditch, brought about by circumstances over which the owner has no control, does not work an abandonment of a ditch, as the intent to abandon is lacking." 2 Kinney on Irrigation and Water Rights (2d Ed.) p. 1999.

The physical structure of the ditch was partially destroyed by the acts of others, but a part of it still exists. Due to such circumstances defendants were not able to use the ditch itself, but the easement which they had is the right of way; if that be terminated, it can never be revived, even though the lands be reconstructed as before; but if it is merely suspended, it may be revived. 28 C. J. S., Easements, § 66, page 733.

The trial court concluded that the defendants have an easement of right of way over the lands of the plaintiffs. We have considered the points made against

that conclusion and cannot say that the right of way was terminated by act of God, by the act of anyone with permission of the defendants, or by abandonment, or that the court's conclusion was erroneous in the respect complained of in said point three.

Having concluded that the court properly took into consideration the affirmative defense which was litigated, and that the existence of the defendants' easement of right of way is not denied as a matter of law, there remains for determination the question whether the judgment is correct and is sustained by the trial court's conclusion that "the easement of the dominant estate was altered by lawful authority, with consent of the owner of the servient estate, and defendants have a right to make such alteration that will regain the use of their easement." Under the admitted facts, is that proposition applicable to the case at bar? Is it properly applied here?

Plaintiffs attack this determining conclusion of the decision under their second point, repeated here for convenience: "The owner of an easement can make no alteration in the dimensions, location or use of his easement which increases the burden on the servient estate or by which the servient estate is damaged, except by consent of the owner of the servient estate." So many times has this proposition been stated and repeated and approved by the courts that we may term it hornbook law. In their brief the defendants commence the answer to this point by saying, "ordinarily speaking we admit that this is a correct statement of the law, but * * *"

Under the title Easements, 28 C. J. S., § 95–b, page 777, we find:

"Since * * * an easement constitutes a restriction on the right of property of the owner of the servient tenement, the owner of the dominant tenement can make no alteration in the dimensions, location, or use of the easement which would increase such restriction, or by which the condition of the servient estate is made worse, unless the consent of the owner of the servient estate is first obtained. Mere matters of convenience do not justify such alterations. Furthermore the owner of the dominant estate cannot make any material alterations in the *character* of his easement, although no damage results in consequence thereof to the servient estate, or although it would even be beneficial to it." (Italics supplied.)

And in cases involving water and water rights and ditches, dams, canals and works for conveying and storing and using water we find the same rules applying; some typical declarations on the point will be quoted.

"As the right to the ditch or other artificial watercourse is an easement, no change can be made against the landowner over whose land the ditch passes that is burdensome to the servient tenement, or *that changes the character of the servitude;* as moving a ditch to a new place, or enlarging it. Even if the enlargement or change would benefit the servient estate, the owner thereof has a right to be his own judge of whether he will permit it." (Italics supplied.) Wiel, Water Rights in the Western States (3d Ed.) p. 539, Sec. 502.

In the case of White Bros. & Crum Co. v. Watson, 64 Wash. 666, 117 P. 497, 499, 44 L.R.A.,N.S., 254, spring floods destroyed the easement owner's flume and head ditch and did such damage to its ditch system that it was necessary to change the point of diversion, build a dam and lay a pipe line in order to use the water and unless this could be done the Company would be without water in the future; the appellant, being said Company, went upon the respondent's land to commence the construction and respondent drove them off. The appellant sued for injunction and other relief. The cause was determined on demurrer whereby the legal question posed was simply whether the appellant, the easement owner, had the right to change its mode of conducting the waters for its use, over the lands of respondent, owner of the servient estate, from flume and ditch to dam and pipeline and to change the point of diversion, without consent of the owner of the servient estate. It was ruled that that could not be done and that decision was affirmed, the Supreme Court of Washington saying on the subject:

"The manner of diversion, the length and location of the right of way, the means of conveyance of the water over the right of way—in short, the easement—became fixed and determined by the facts as they existed when respondents' homestead entry was allowed. No change can now be made in the *character of the servitude. A pipe line cannot be substituted for a ditch and flume* nor the right of way changed or lengthened. As to these things the authorities are uniform. Weil's Water Rights in the Western States (2d Ed.) pp. 285, 286, §§ 179–180; title 'B,' Change of Means of Use; Oliver v. Agasse, 132 Cal. 297, 64 P. 401; Vestal v. Young, 147 Cal. 715, 82 P. 381; Johnston v. Hyde, 32 N.J. Eq. 446; Allen v. San Jose Land & Water Co., 92 Cal. 138, 28 P. 215, 15 L.R.A. 93; Dickenson v. Grand Junction Canal Co., 15 Beav. 260; Barrows v. Fox, 98 Cal. 63, 32 P. 811; Gregory v. Nelson, 41 Cal. 278, 'It is the exclusive right of the owner of the ser-

vient tenement, suffering the burdens of an easement localized and defined, to say whether or not the dominant owner shall be permitted to change the character or plan of the servitude.' Jaqui v. Johnson, 27 N.J.Eq. 526, 532.

"It is suggested that the right which the appellant is seeking to obtain is rather an implied or secondary easement than an additional servitude. The term 'secondary easement' is applied. to the right to enter and repair and do those things necessary to the full enjoyment of an easement as existing. We have been cited to no authority for extending that term to a change, alteration, or extension such as here contemplated while the above authorities hold that the things contemplated are in their nature an additional servitude." (Italics supplied.)

The Supreme Court of Idaho, in a case decided in 1947, said:

"There is no question that a person cannot by a dam, embankment or other artificial means, obstruct the natural flow of water in a stream, and throw it back on the lands of another, without being liable for the resulting damages, unless he has an easement or right upon or in such lands to do so. Scott v. Watkins, 63 Idaho 506, at page 522, 122 P.2d 220; Johnson v. Twin Falls Canal Co., 66 Idaho 660,

167 P.2d 834; Alesko v. Union Pacific Railroad Co., 62 Idaho 235, 109 P.2d 874; Fischer v. Davis, 19 Idaho 493, 116 P. 412; Fischer v. Davis, 24 Idaho 216, 133 P. 910; Stout v. McAdams, 3 Ill. 67, 33 Am.Dec. 441.; Bradbury v. Vandalia Levee & Drainage Dist., 236 Ill. 36, 86 N.E. 163, 19 L.R.A.,N.S., 991, 15 Ann.Cas. 904; 67 C. J. 722, 723; Callison v. Mt. Shasta Power Corp., 123 Cal.App. 247, 11 P.2d 60, at page 64; See Annotations, 59 L.R.A. 817, and 28 L.R.A.,N.S., 157." Chandler v. Drainage Dist. No. 2, etc., 68 Idaho 42, 187 P.2d 971, 973.

And see Hannah v. Pogue, 23 Cal.2d 849, 147 P.2d 572; Big Cottonwood Tanner Ditch Co. v. Moyle, 109 Utah 213, 174 P.2d 148, 172 A.L.R. 175; North Fork Water Co. v. Edwards, 121 Cal. 662, 54 P. 69.

These cases and many others furnish an overwhelming weight of authority of the correctness of the proposition presented by the plaintiffs as their second point. But is there not an exception to the rule? The defendants say there is, and they rely on the principle stated in the last sentence of § 95–b appearing on page 777 of 28 C. J. S., which is the sub-section from which we quoted a while ago at the beginning of the discussion of this point. The clause pointed out and relied on by the defendants is couched almost in the words em-

ployed by the trial judge in announcing his conclusion. It reads:

"* * * and if the condition of the surrounding property is subsequently changed by lawful authority so as to interfere with the enjoyment of the easement, he may make such alterations as will render it effectual under the new conditions."

Defendants remind us that the Soil Conservation Service made the alteration in their ditch with the consent of the landowner and that plaintiffs had knowledge of the ditch right before they bought the land. This change in the conditions they feel gives them warrant to attempt and to make the "alterations" which were the cause of this suit.

The principle quoted next above has been adhered to and applied in numerous cases where the easement involved was for a passageway or road, and where some change in grade of a connecting street or highway and made by the highway departments, or those having authority, had caused the right of way to become difficult or even impassable. Reasonable changes by the easement owner have been approved and the right to make them upheld. All the cases cited to the text of C. J. S., and others on the subject, have been examined and none has been found remotely akin to the case at bar. One point of difference from this case was noted in every other case found on the subject; it was this, that the alterations attempted by the easement owner there *related to his easement*. That is not true of our case.

A reading of the section under discussion will disclose that the alterations it speaks of that dominant estate owner may make to meet the changed conditions of the surrounding property, must be alterations of the subject of the easement itself; for it is the changed condition of the *surrounding property* which has diminished the enjoyment of the easement, and it is alteration of that easement which can render that easement effectual. Among the cases cited under the text is Fletcher v. Stapleton, 123 Cal.App. 133, 10 P.2d 1019, 1021, in which the Court said:

"* * * it is evident that, by reason of the acts of plaintiffs in grading their lot and the act of the city in lowering the grade of St. George street, in such a manner as to prevent the use of said right of way, it became of no practical utility or avail, and therefore to all intents and purposes was extinguished, unless plaintiffs made it available by entering upon the servient estate and excavating deep cuts through it, which under the authorities above cited they were not allowed to do, because, as the trial court found, such acts would increase

the burden on the servient estate, and result in irreparable injury thereto. Upon this latter point plaintiffs cite the case of Ballard v. Titus, 157 Cal. 673, 110 P. 118, to the effect that the grant of a 'right of way' carries the implied right to make such changes in the surface of the land as are necessary to make the right of way available for travel in a convenient manner; but manifestly this does not mean that the grantee may so change the surface of the land as to seriously injure or likely destroy the usefulness of the servient estate."

 In the case now before us when the defendants discovered that changes had been made, not in the surrounding property, but in their ditch itself, they at first did nothing about it for several years; then they commenced to make alterations, but not of their ditch. Their efforts consisted of erecting a dam or headgate in the river by which the whole river flow was impounded and backed up over two or three acres of plaintiffs' lands. Allowing for a good wide ditch the approximate original length of which we know, a couple of minutes' calculation discloses that plaintiffs' land being burdened by this new project is some 30 times or more the amount covered by the original ditch. This is not the regaining of the former easement or its enjoyment; it is instituting a new and much greater easement. If they are authorized so to expand by making "alterations," there is no limit to the amount of plaintiffs' lands that may be taken less than its all.

The trial court's second conclusion of law, in his decision aforesaid, may be academically correct. In Big Cottonwood, etc., v. Moyle, supra, the Supreme Court of Utah makes two pronouncements that are pertinent [109 Utah 213, 174 P.2d 157]: "It is the application of the rule which gives rise to the practical difficulties"; and "The equities must be weighed. Each case must be decided on its own particular facts. In no case would the easement owner be allowed in improving his ditch to take more or different land from the servient estate than that used during the prescriptive period."

The implication of the decision was too broad. The judgment was erroneous. The plaintiffs were entitled to an injunction as prayed under the facts found by the court. But the judgment should be without prejudice to the defendants or to the plaintiffs to have determined in another and proper action, their respective rights and obligations concerning the water rights and the easement of right of way and other property rights, if any, referred to and involved in this suit and that are not determined by the granting of such injunction.

The judgment will be reversed and the cause remanded to the District Court of Otero County, with directions to reinstate the cause upon its docket and render judgment for injunction against the defendants as prayed.

It is so ordered.

SADLER, C. J., and McGHEE, COMPTON and LUJAN, JJ., concur.